# Note

BORROWER(S):
RUTH L MAHON

1214 HARDING DRIVE
HAVERTOWN, PA 19083-5223

Amount Financed $ 122210.00

**1. BORROWER(S) PROMISE TO PAY.** In return for a loan that I have received, the undersigned Borrower(s) (hereinafter referred to as "I," "me," or "my") jointly and severally promise to pay to Wachovia Bank, National Association, a national banking association organized and existing under the law of the United States of America ("Lender"), the sum of $ 122210.00 (this amount will be called "Principal"), plus daily simple interest ("Interest") beginning on the date that Principal is advanced. The Principal may include points, origination fees and other amounts permitted by applicable law. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note and who is entitled to receive payments under this Note will be called the "Note Holder."

**2. INTEREST.** Interest will accrue on the entire Principal balance outstanding at any time. Notwithstanding anything to the contrary, I do not agree to pay and the Note Holder does not intend to charge any Interest at a rate that is higher than the maximum rate of Interest that could be charged under applicable law for the extension of credit that is agreed to under this Note (either before or after maturity). If any notice of Interest accrual is sent and is in error, and if the Note Holder actually collects more Interest than allowed by law or this Note, the Note Holder agrees to refund any such excess Interest.

I agree to pay Interest on the unpaid Principal balance of this Note owing after maturity, and until paid in full at the same rate in effect before maturity. I agree that any loan origination fee paid to the Note Holder is earned as of the date of this Note.

Interest accrues on the Principal remaining unpaid from time to time, until paid in full. The Interest Rate, as defined in this Section 2 below, will be charged at a rate of 1/365th of the Interest Rate for each day, or 1/366th of the Interest Rate for each day in any leap year, applied against that day's outstanding Principal balance. The dollar amount of the finance charge disclosed to me for this credit transaction is based upon my payments being received by the Note Holder on the date payments are due. If my payments are received after the due date, even if received before the date a Late Charge as permitted by Section 4 applies, I may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of Principal. This is a result of the accrual of daily Interest.

If the governing law which applies to this Note sets maximum loan charges and is finally interpreted so that the Interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such Interest or other charge shall be reduced by the amount necessary to reduce the Interest or other charge to the permitted limit and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial payment.

Check One:

[X] **Fixed Rate**
   I agree to pay Interest on the outstanding Principal balance at a fixed annual rate of __6.75__ % ("Interest Rate").

[ ] **Adjustable Rate**
   **(A) Interest Rate:** I agree to pay Interest on the outstanding Principal balance at the initial annual rate of __N/A__ % ("Interest Rate") until the first Change Date as defined in Paragraph (B) below. Thereafter, the Interest Rate I pay may change as of each Change Date and will be calculated pursuant to Paragraph (D) below.
   **(B) Date Definitions:**
      (i) **Change Date:** The date that falls 12 month(s) from the date of this Note, and every 12 month(s) thereafter is called a "Change Date."
      (ii) **Index Date:** The 25th day of each month is an "Index Date." If the Index is not published on the 25th day of the month, then the Index Date shall be the first day prior to the 25th day of the month on which the Index is published.
      (iii) **Look-back Date:** The date that is 45 days prior to a Change Date is called the "Look-back Date."
   **(C) The Index:** Check One:

   [ ] The "Index" is the "Prime Rate" as published on the Index Date in the "Money Rates" section of *The Wall Street Journal*, Eastern Edition. If there is more than one Prime Rate published on an Index Date, then the Note Holder will use the higher of such prime rates. If this Index ceases to exist, the Note Holder may substitute another Index (and Margin, as described in Paragraph (D) below) which movement approximates the movement of the Prime Rate.

   [ ] The "Index" is the average of interbank offered rates for ____ month U.S. dollar-denominated deposits in the London market ("LIBOR") as published on the Index Date in the "Money Rates" section of *The Wall Street Journal*, Eastern Edition. If there is more than one LIBOR published on an Index Date, then the Note Holder will use the higher of such LIBOR rates. If this Index ceases to exist, the Note Holder may substitute another Index (and Margin, as described in Paragraph (D) below) which movement approximates the movement of LIBOR.
   **(D) Calculation of New Interest Rate:** The new annual Interest Rate that will be applicable beginning on each Change Date will be based on the Index published on the Index Date that occurs during the calendar month that

565957 (Rev 03)


EXHIBIT A

immediately precedes the Look-back Date for that Change Date. On the Look-back Date, the Note Holder will calculate my new Interest Rate by adding _____% ("Margin") to the Index on the Index Date. Subject to any applicable limitations set forth in Paragraph (E), this new Interest Rate will become effective on each Change Date.

**(E) Limits on Interest Rate Changes:** If this Note is governed by North Carolina law, my Interest Rate will never be greater than 16.00%. Otherwise, my Interest Rate will never be greater than 18.00%. ☐ If this box is checked, Interest Rate increases will be subject to an additional limitation on each Change Date such that the Interest Rate I pay will never be increased on any single Change Date by more than _____% from the Interest Rate I have been paying for the preceding 12 months. ☐ If this box is checked, there will be no additional limitation on increases in my Interest Rate.

**(F) Notice of Changes:** The Note Holder will deliver or mail to me a notice of any changes in my Interest Rate before the effective date of any change or as required by applicable law. The notice will include information about any changes to my Payment Amount.

3. **PAYMENTS.**
   **(A) Payment Options and Schedule:**

   Check One:

   ☐ **Interest Payments with or without Principal Reduction Payments and/or a Balloon Payment:**

   I will pay accrued Interest beginning on _____ as follows: check one: ☐ monthly or ☐ quarterly ("Interest Payments"). The amount of each Interest Payment will vary depending upon the amount of principal outstanding and if Section 2 of this Note provides for an Adjustable Rate, the Interest Rate then in effect. In addition to the Interest Payments, Principal Payments shall be payable as set forth in the Payment Schedule below:

   ☒ **Fully Amortizing Installment Payments or Installment Payments with a Balloon Payment:**

   I will pay the unpaid Principal and Interest as set forth in the Payment Schedule below. If Section 2 of this Note provides for an Adjustable Rate, the payment amounts, including the final payment, as set forth in the Payment Schedule may change. On each Change Date, the Note Holder will determine the payment amount that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full over the remaining portion of a period of time ending on the Maturity Date as defined in paragraph (E), below, at my new Interest Rate. The result of this calculation will be the new payment amount. I will pay my new payment amount beginning on the first payment due date after the Change Date until the payment amount changes again or until the Maturity Date as described in Paragraph (E).

   Payment Schedule:

| Number of Payments | Payment Amount | Frequency | Start/Due Date | Number of Payments | Payment Amount | Frequency | Start/Due Date |
|---|---|---|---|---|---|---|---|
| 340 | $ 809.82 | M | 06/25/05 | | $ | | |
| | $ | | | | $ | | |

Frequency Legend: M = Monthly  Q = Quarterly  S = Semi Annually  A = Annually

**(B) Place of Payments:** I will make my payments in U.S. funds payable to the Note Holder at the address provided to me by the Note Holder or at a different address if required by the Note Holder.

**(C) Application of Payments:** Unless otherwise prohibited by the law governing this Note, each payment I make on this Note will first reduce the amount of accrued unpaid Interest, then any optional insurance premiums due, then any applicable unpaid charges and then unpaid Principal. I will make payments until I have paid all of the Principal and Interest and any other fees or charges that I may owe under the terms of this Note.

**(D) Maturity Date:** If on _____**09/25/33**_____, I still owe any amount under this Note, I will pay those amounts in full on that date which is called the "Maturity Date."

**(E) Balloon Payment:** If the Payment Schedule requires me to make a final payment that is significantly larger than any other payment ("Balloon Payment"), I understand that I may be required to make this Balloon Payment on the Maturity Date. I understand that the law governing this Note may provide me with a right to refinance any Balloon Payment. If I have a right to refinance any Balloon Payment, the Note Holder will advise me as to whether I have a limited right to refinance and the terms surrounding such refinance. Otherwise, I understand that the Balloon Payment disclosed above will be due and payable on the Due Date disclosed above.

4. **FEES AND CHARGES.** In addition to Interest and other amounts I may agree to pay, I agree to pay the Note Holder the following additional fees and charges:

   (A) **Late Charges:** The following late charges will apply to the extent the Note is governed by the laws of the jurisdiction referenced in the subsection header or text:
   
   (1) Alabama. If a scheduled payment or any portion is received more than 10 days after the day it is due, I will pay a late charge equal to 5% of the unpaid portion of the scheduled payment amount or $10, whichever is greater, but my late charge will never exceed $100.00
   
   (2) Connecticut. If a scheduled payment or any portion is not received within ten (10) days of the date it is due, I will pay a late charge equal to the lesser of $10.00 or 5% of the scheduled payment amount.
   
   (3) Mississippi. If a scheduled payment or any portion is received more than fifteen (15) days after the date it is due, I will be charged 4% of the unpaid portion of the scheduled payment or $5.00, whichever is greater, but my late charge will never exceed $50.00.
   
   (4) New Jersey and Pennsylvania. If a scheduled payment or any portion is not received within fifteen (15) days of the day it is due, I will pay a late charge equal to 5% of the scheduled payment amount.
   
   (5) North Carolina. If a scheduled payment or any portion is not received within fifteen (15) days of the date it is due, I will pay a late charge equal to four percent (4%) of the scheduled payment amount.
   
   (6) South Carolina. If a scheduled payment or any portion is not received within ten (10) days of the day it is due, I will pay a late charge equal to five percent (5%) of the scheduled payment amount (but not less than $5.80 nor more than 14.50) or such greater amounts as may be authorized by South Carolina law from time to time.

    (7) **Other.** If this Note is governed by the law of any jurisdiction other than those referenced in this subsection above and a scheduled payment or any portion is not received within ten (10) days of the date it is due, I will pay a late charge equal to 5% of the scheduled payment.

(B) **Returned Payment Fee:** Unless otherwise limited or prohibited by the law governing this Note, I will pay a charge of up to $25.00 for each payment (check or automatic payment) that I make that is returned or dishonored for any reason.

(C) **Prepayment Charge:** If this Note is governed by the laws of Connecticut, Florida, Georgia, Tennessee or Virginia, and I prepay this Note in full at any time prior to the expiration of 2/3rds of the term of this Note, I will pay a prepayment penalty of $100.00. If this Note is governed by Maryland law and Lender will be secured in the first lien position as of the date of this Note, and if I make a full prepayment of the Principal at any time prior to the expiration of 2/3rds of the term of this Note, I will pay a prepayment penalty of $100.00. If this Note is governed by the laws of a jurisdiction other than those referenced in this subsection above, I will not have to pay a prepayment penalty.

(D) **Origination Fee.** If an origination fee or other fee or charge is charged as Included on the HUD-1, HUD-1A, or Itemization of Amount Financed prepared in connection with this loan transaction, I agree to pay such fees and charges. Except as otherwise required by law, I agree that such fees and charges are fully earned as of the date of this Note and are nonrefundable upon prepayment.

(E) **Additional Charges:** I agree that if, during the term of this Note, I request other services related to servicing or administering my loan for which the Note Holder has a scheduled charge, I will, to the extent permitted by the law governing this Note, pay the Note Holder the then current fee for such services or request if the Note Holder agrees to perform such service or request.

5. **BORROWER'S FAILURE TO PAY AS REQUIRED AND TERMS OF DEFAULT.**
(A) **Terms of Default:** I will be in Default under this Note if any of the following things happen:
(1) If I fail to make any payment or comply with any of the terms of this Note or any other note with the Note Holder now or in the future; or
(2) If I make any false, incorrect or misleading representation or warranty at any time during the application process; or
(3) If I die; or
(4) If I become involved in any bankruptcy or insolvency proceeding; or
(5) If the collateral described in Section 6 or any schedule to this Note is used in violation of any law or regulation or if a judgment or lien is filed or levied against me or the collateral or the collateral is impaired, damaged, or removed from the custody of the Note Holder; or
(6) If I fail to abide by the term(s) of any Security Instrument or other documents described in Section 6 which secure payment of this Note.

(B) **Notice of Default:** If I am in Default, then the entire Principal balance, accrued Interest, fees, and collection costs permitted to be collected under applicable law will be immediately due and payable. At its option or if required by law, the Note Holder may send me a written notice informing me of said Default and acceleration. If I make any payment after the Note Holder has demanded payment of the entire balance due, my payment will be applied to the unpaid balance due under this Note. The unpaid balance consists of the Principal Amount remaining due, plus accrued finance charges, unpaid Late Charges, collection costs, and all other amounts due to the Note Holder under this Note. The Note Holder shall also have other rights and remedies provided by law. If the net proceeds of collateral sold do not pay my indebtedness in full, I will pay the Note Holder the difference, plus Interest at the Note Interest Rate until the unpaid balance is paid in full. Any Default of this Note will also constitute an event of Default of any separate Mortgage, Deed of Trust or Security Deed securing this Note ("Security Instrument") or Pledge Agreement securing this Note. Upon Default, the Note Holder may proceed to enforce the terms of this Note or enforce any rights that it may have under the Security Instrument or Pledge Agreement.

(C) **No Waiver by Note Holder:** Even if, at a time when I am in Default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in Default at a later time. Any failure to enforce any provision of this Note by the Note Holder shall not constitute any waiver of such rights of the Note Holder to subsequently enforce such rights or remedies.

(D) **Payment of the Note Holder's Costs and Expenses:** If the Note Holder has required me to pay immediately in full as described above, and I fail to do so and such failure causes the Note Holder to incur additional expenses, the Note Holder will have the right to a refund of all of its costs and expenses to the extent not prohibited by the law governing this Note. Those expenses include, for example, reasonable attorneys' fees for an attorney who is not the Note Holder's salaried employee, foreclosure fees and court costs. In no event shall these expenses exceed fifteen percent (15%) of the unpaid balance plus Court Costs.

6. **THIS NOTE IS SECURED BY A SECURITY INSTRUMENT.** In addition to the protections given to the Note Holder under this Note, a separate Security Instrument(s), on real property (the "Property") described in the Security Instrument and dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. The Security Instrument describes how and under what conditions I may also be required to make Immediate payment in full of all amounts I owe under this Note. I agree to these conditions. Subject to applicable law, I understand that this loan is subject to repayment in full in the event the Property securing this debt is sold, conveyed or otherwise transferred.

If in addition to a Security Instrument, I pledge securities, cash accounts or other liquid collateral (the "Other Collateral") as Other Collateral for this Note, then I grant to the Note Holder a perfected security interest in such Other Collateral and all additions or replacements to, or proceeds of as is more fully described in the separate Collateral Pledge Agreement (the "Pledge Agreement") executed as of the same date as this Note. The Pledge Agreement describes the Other Collateral in detail and protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. The Pledge Agreement also describes how and under what conditions I may also be required to make immediate payment in full of all amounts that I owe under this Note. I agree to these conditions. If the Other Collateral includes securities, I agree to deliver immediately to the Note Holder, fully endorsed, any certificates for shares representing any stock dividend, stock split or right to subscribe. I further pledge and agree to deliver to the Note Holder, upon demand, additional Other Collateral satisfactory to the Note Holder and in accordance with all margin requirements. If I do not provide the Note Holder with a perfected security interest in the Other Collateral and the Note Holder incurs any expenses, including attorneys' fees, in order to obtain a perfected security interest, I will be responsible for such expenses.

If I do not provide or assist the Note Holder in obtaining a perfected security interest in the Property or Other Collateral and the Note Holder incurs any expenses, including attorney's fees, in order to obtain a perfected security interest in such Property or Other Collateral, to the extent not otherwise prohibited by the law governing this Note, I agree that the Note Holder may add the amount of such expenses to the Principal and that such expenses will accrue Interest at the Note Interest Rate until paid in full.

7. **PREPAYMENT.**
(A) Subject to the order of application of payments described in Section 3, I have the right to make payments of Principal at any time before they are due. A prepayment of all unpaid Principal is known as a "full prepayment." A prepayment of only part of the unpaid Principal is known as a "partial prepayment."
(B) If I make a partial prepayment, my next due date may be advanced. If I make a payment that is more than the amount that is due, the amount in excess of the amount due is called an "Excess Payment." If I make an Excess Payment, the Note Holder will assume that I want to reduce or skip my next scheduled payment or payments. If the Excess Payment is less than or equal to the next scheduled payment, the next scheduled payment will be reduced by the amount of the Excess Payment. If the Excess Payment exceeds the amount of my next scheduled payment, the number of payments that may be skipped will be determined by subtracting each subsequently scheduled payment from the Excess Payment. So long as the remaining portion of the Excess Payment exceeds the next scheduled payment amount, that payment may be skipped. When the remaining portion of the Excess Payment is equal to or less than my next scheduled payment, that remaining portion will be used to reduce the amount of the next scheduled payment. If I want the Note Holder to handle an Excess Payment differently, I will tell the Note Holder in writing. I understand that Interest will continue to accrue on the outstanding principal balance and that if I want maximum Interest savings from Excess Payments, I should continue to make payments on or before the scheduled due date.

8. **BORROWER'S WAIVERS.** I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of non-payment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "Guarantors," "Sureties," "Co-Signers" and "Endorsers."

9. **GIVING OF NOTICES.**
(A) Any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail addressed to me at the address contained in this Note. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.
(B) Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address provided to me by the Note Holder. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

10. **PAYMENT IN FULL. I AGREE THAT THE NOTE HOLDER MAY ACCEPT PAYMENTS MARKED "PAID IN FULL" WITHOUT ANY LOSS OF THE NOTE HOLDER'S RIGHTS UNDER THIS NOTE UNLESS I SEND THEM FOR SPECIAL HANDLING TO WACHOVIA BANK, NATIONAL ASSOCIATION, SPECIAL PAYOFFS, PO BOX 10723, ROANOKE, VA 24022. ACCEPTANCE OF ANY PAYMENT SENT TO THE SPECIAL HANDLING ADDRESS DOES NOT WAIVE THE NOTE HOLDER'S RIGHT TO SUBSEQUENTLY REJECT SUCH PAYMENT IN ACCORDANCE WITH APPLICABLE LAW.**

11. **EXTENSIONS AND MODIFICATIONS.** All Guarantors, Sureties, Co-Signers, Endorsers and I consent to any and all extensions of time, renewals, waivers or modifications which may be granted or consented to by the Note Holder as to the time of payment or any other provision of this Note. If in its sole discretion, the Note Holder permits an extension, renewal or modification to this Note, I agree to pay a charge not to exceed an amount permitted by the law governing this Note. All Guarantors, Sureties, Co-Signers, Endorsers and Makers hereby waive presentment, notice of dishonor, and protest hereof. This Note is the joint and several obligation of each Maker and shall be binding upon them and their heirs, successors and assigns.

12. **INSURANCE REQUIREMENTS.** I agree to purchase property/hazard insurance insuring the Property against loss and as required by the Security Instrument. I acknowledge that I may obtain property/hazard insurance from any insurance company of my choice, subject to the Note Holder's right of approval which shall not be unreasonably withheld. Unless I provide the Note Holder with evidence of the insurance coverage required by my agreement with the Note Holder, the Note Holder may purchase insurance at my expense to protect the Note Holder's interests in the Property. This insurance may, but need not, protect my interests. The coverage that the Note Holder purchases may not pay any claim that I make or any claim that is made against me in connection with the Property. I may later cancel any insurance purchased by the Note Holder, but only after providing the Note Holder with evidence that I have obtained insurance as required by our agreement. If the Note Holder purchases insurance for the Property, I will be responsible for the costs of the insurance, including interest and any other charges the Note Holder may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance will be added to the Principal and will accrue Interest at the Note Interest Rate. I understand that the costs of the insurance obtained by the Note Holder may be more than the cost of insurance I may be able to obtain on my own.

13. **RESPONSIBILITY OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each of us is jointly and severally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any Guarantor, Surety, Co-Signer or Endorser of this Note (as described in Section 7 above) jointly and severally guarantee the payment, when due, to any Note Holder hereof of all amounts from time to time owing on this Note. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. I and any Guarantor, Surety, Co-Signer or Endorser of this Note further agree that the failure by the Note Holder to perfect any security interest granted by this Note shall not affect my liability or the liability of any Guarantor hereon.

14. **GOVERNING LAW.** This Note shall be governed by the laws of the State where the Property securing this loan is located and applicable federal law. If the Property securing this debt is located in Maryland, to the extent this Note is governed by Maryland law, this Note is governed by *Md. Code Ann., Commercial Law §12-1001 et. seq.* and applicable federal law.

**15. GENERAL PROVISIONS.** I agree that I may not sell, assign or otherwise transfer my rights or obligations under this Note and that such action will be void. Any person who takes over my rights or obligations under this Note by operation of law will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of any Guarantor, Surety, Co-Signer or Endorser of this Note is also obligated to keep all of the promises made in this Note. This Note is intended by the Note Holder and me as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing signed by the Note Holder and me. This Note benefits the Note Holder, its successors and assigns, and binds me and my heirs, personal representatives and assigns. If any provision of this Note shall for any reason be held to be invalid or unenforceable, such determination shall not affect the enforceability of the remaining provisions of this Note. Headings are for convenience of reference only and shall not affect the construction of this Note or any other document associated with this loan.

**16. SAVINGS AND COMPLIANCE.** It is the intention of you and me to comply with applicable law. In each and every instance, our rights shall be limited by applicable law (to the extent such laws may not be effectively waived), construed so as to comply with such laws, and our rights may not be exercised except to the extent permitted by applicable law. No part of this agreement, nor any charge or receipt by you, is supposed to permit you to impose interest or other amounts in excess of lawful amounts. If an excess occurs, you will apply it as a credit or otherwise refund it and the rate or amount involved will automatically be reduced to the maximum lawful rate or amount. To the extent permitted by law, for purposes of determining your compliance with law, you may calculate charges by amortizing, prorating, allocating and spreading any such charges.

**17. DOCUMENTARY TAX.** For loans secured by real property located in Florida, the state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

**NOTICE TO BORROWER:**
1. CAUTION: IT IS IMPORTANT THAT THE BORROWER THOROUGHLY READS THIS NOTE BEFORE THE BORROWER SIGNS IT.
2. THIS NOTE IS SECURED BY EITHER A FIRST OR SUBORDINATE LIEN ON REAL PROPERTY.
3. THIS NOTE MAY PROVIDE FOR THE PAYMENT OF A PENALTY IF THE BORROWER WISHES TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THIS NOTE.
4. THE BORROWER IS ENTITLED TO A COPY OF THIS NOTE.
5. DO NOT SIGN THIS NOTE IF IT CONTAINS ANY BLANK SPACES.
6. THE BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.

For Texas residents only: NOTICE TO CONSUMER: UNDER TEXAS LAW, IF YOU CONSENT TO THIS AGREEMENT, YOU MAY BE SUBJECT TO A FUTURE RATE AS HIGH AS 18 PERCENT PER YEAR.

By signing and sealing this Note, I agree under seal to the terms set forth above.

_Ruth L. Mahon_ [SEAL]
Borrower RUTH L MAHON

_____ [SEAL]
Borrower

Any Guarantor, Surety, Co-Signer or Endorser of this Note acknowledges receipt and execution of the Co-Signer's Notice.

_____ [SEAL]
Guarantor - Co-Signer

_____ [SEAL]
Guarantor - Co-Signer

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER WITH WACHOVIA BANK, N.A.

BY _Jan Kershaw_

JAN KERSHAW
VICE PRESIDENT LOAN DOCUMENTATION

---

**FOR OFFICE USE ONLY**

Endorsement.
Pay to the Order of _____

Without Recourse
_____

By: _____
Name: _____
Title: _____